# Buckingham Township School District v. Large

*Eastburn & Gray*, for plaintiff.

*William H. Satterthwaite* and *Ross & Smith*, for defendants.

SATTERTHWAITE, J., November 8, 1957.—This action to quiet title involves the determination of the present ownership of a typical one-room country schoolhouse, known as the Friendship School, and the appurtenant half-acre of land on which it stands, located on the northwesterly side of Cold Spring Creamery Road, Buckingham Township. Plaintiff, the School District of Buckingham Township, has brought the within proceedings to establish its fee simple title thereto. Defendants Large and Shepherd were the record owners of the larger tracts from a part of each of which the school lot was originally taken, apparently over 100 years ago; they were served by publication and, of course, have made no answer to plaintiff's complaint, they being long since deceased; judgment by default has been taken against them. Defendants Kreutz and Gemmell are the present record owners of said larger tracts

respectively; they were served personally and have actively opposed the relief sought herein, contending that upon the school district's nonuser of the building and lot since 1952, the same reverted to them as the present owners of the surrounding land. The case is now before the court for disposition as to defendants Kreutz and Gemmell upon stipulated facts, the relevancy and competency of some of which, however, are reserved questions.

The exact date when, and the identity and capacity of those by whom, the school was originally built is not clearly established. The minutes of the township school directors in 1842 disclosed that a proposal to erect a schoolhouse in the relevant portion of the township at public expense was defeated. A newspaper item on February 27, 1849, referred to a new school built by contributions of the neighbors at a location which geographically was consistent with the subject premises, and another historical paper read before and preserved in the archives of the Bucks County Historical Society in 1883 dated the Friendship School as of the year 1848.

While the competency and relevancy of some of those items of evidence have been challenged by plaintiff, in any event it is undisputed that since 1862, plaintiff school district, as such, has exercised dominion and control over this school the same as it has over the other public schools of the township. There is no official record thereof, however, prior to the latter date, its minutes for the period between April 10, 1848, and June 14, 1862, no longer being in existence. In 1877 it replaced the building with a new structure which continued to be used for school purposes until June 1952. Since that time the township's schools have been consolidated, and the Friendship School has actually been used only as a permissive private school in 1953 and 1954. It is presently totally unoccupied. Plaintiff,

however, although no longer using the same for school purposes, has continued to maintain and keep it insured and repaired and has never abandoned the same by formal resolution.

There is no recorded deed or other direct express evidence of a grant to plaintiff, either from Cornelius Shepherd, the record owner from 1843 to 1868 of the land from which the northeasterly half of the school lot derived, or from William K. Large and Mary Ann Large, his wife, the record owners from 1841 to 1877 of the land from which the southwesterly half thereof was taken, and it was expressly stipulated that plaintiff presently has no such deeds in its possession. Plaintiff contends, however, that absolute grants from these representative owners should be presumed in view of its undisputed and continued enjoyment of the premises for a period of not less than 95 years, under the doctrine of presumptive grant reiterated and applied in a practically identical situation in Donegal Township School District v. Crosby, 178 Pa. Superior Ct. 30. It also contends, apparently, that its title is further established by the adverse possession it has continuously maintained over these many years.

We agree with plaintiff that the Donegal case is controlling and completely dispositive of the within proceedings. Judge Woodside's comprehensive opinion for the Superior Court in that case elaborates at length upon the historical background for the doctrine of presumptive grant and concludes, at page 37, in language which is equally applicable here, as follows:

"When a school district is in exclusive possession of a plot of ground for over 55 years, and there is no evidence how it came into possession, we think that the rule of presumptive grant applies and the district has a fee simple title and after ceasing to use the plot for school purposes, still has the right to maintain an action

of ejectment against one claiming title under a former owner of the plot."

Defendants apparently have no serious quarrel with this principle of law as an abstract proposition, but they do deny its controlling effect in this case. Their defenses in the pleadings were in the alternative, either that defendants' respective predecessors had granted base or determinable fees to certain trustees for the school lot, retaining a reversion, since transferred by mesne conveyances to defendants as appurtenances to the remaining larger tracts of land, upon the cessation of the user thereof for school purposes, or that such predecessors had given merely oral permission, license or privilege to such trustees to use the same for that purpose, which permission, license or privilege had now terminated. They contend that the matters set forth in the stipulation support these averments and that therefore, the original possession being explained, plaintiff may not have the benefit either of the doctrine of presumptive grant or of the principle of prescriptive title by adverse possession. Plaintiff counters by challenging the competency of the items of the stipulation so relied upon from an evidential point of view. The case was submitted to the court for disposition with the understanding that the stipulated facts, subject to the rulings of the court upon the competency and relevancy of some thereof, should provide the basis for decision.

The keystones of defendants' positions are the substantially identical recitals contained in certain of the deeds in their respective chains of title. In 1843, Cornelius Shepherd became the owner of a 50-acre tract out of which, in fact, the school lot in part was later taken. In 1868, he conveyed this tract to one Henry C. Pennington, the deed containing the following provision:

"Excepting a quarter acre of land in the South corner of the above fifty acres, which Cornelius Shepherd and Jane, his wife, by deed granted and conveyed to Trustees for school purposes, and when done with for school purposes, to revert back to the owner of the above described fifty acres."

A purchase-money mortgage from Pennington to Shepherd, a later deed from Pennington to Edwin Hammerly and another mortgage from the latter in 1875 contained similar provisions, after which the title devolved through several intermediate parties and ultimately vested in defendants Gemmell in 1947 with no further mention of the exception or alleged reverter. Similarly, in 1841, William K. Large and Mary Ann Large became the owners of 20 acres, 97 perches, of land from which the balance of the school lot was thereafter detached. In 1877, their heirs conveyed the same to Howard P. Large, the deed excepting a quarter-acre lot in the east corner thereof and reciting a conveyance by William K. Large and Mary Ann Large to trustees for school purposes with an alleged reverter to the owner of the 20-acre tract, in language identical to that mentioned in the Shepherd deed above. This provision was repeated in a deed from Howard T. Large to one Andrew J. Hines in 1883, but was thereafter omitted in the various conveyances comprising the line of title, down to 1942 when a mere reference to the exception in the Hines deed in 1883 was inserted, which reference was repeated in the deed to defendants Kreutz in 1947.

Plaintiff has objected to any consideration of these deed recitals, claiming that they are incompetent as inadmissible self-serving hearsay evidence. In answer, defendants contend for their admissibility (1) as declarations against interest and (2) as "ancient documents". The former argument may be disposed of by

reference to the Donegal case, supra, and an earlier opinion in the same case reported in 171 Pa. Superior Ct. 372. At the first trial in that case, testimony was admitted over the objection of the school district to the effect that a prior owner of the larger tract of which the school lot was a part had orally declared that if the property were not used as a school, it would automatically become a part of the farm again. The Superior Court held this to be error and granted a new trial, stating, 171 Pa. Superior Ct. 372, 375, as follows:

"The testimony was clearly inadmissible. Declarations by a prior owner, whether dead or alive, against his interest, made while holding the legal title to the property are admissible in evidence against him and *against those claiming under him* . . . (citing cases) . . . The declaration admitted into evidence was that of *George* Pontius; the school district was claiming under *John* Pontius [George's predecessor in title]; and the claim of the school district could not be affected by a declaration of George Pontius. *Furthermore, it was not a declaration against interest. Manifestly it was a self-serving declaration; a claim of title to land which George did not have possession of at the time of the declaration.*" (Italics of last two sentences supplied.)

At the retrial of the Donegal case, defendant again offered the same testimony and in addition attempted to show that George Pontius, declarant, in fact was the real owner of the farm by oral gift from his father John Pontius at the time the school district had entered into possession. Judgment for the school district was affirmed, the Superior Court holding that the declarations were properly excluded and pointing out that it was of no real moment whether or not George was in possession or was the real owner when the schoolhouse was built since defendant would be faced

with the same presumption of grant to the school authorities in any event: 178 Pa. Superior Ct. 30, 34.

We do not understand defendants' attempt to distinguish the decisions in the Donegal cases. They point to the fact that therein the declarations in question were alleged to have been made long after the prescriptive period of 21 years had run from the time of the school district's first possession, whereas in the instant case these provisions were matters of record prior to the expiration of such period, at least in the case of the Shepherd-Gemmell title. It occurs to us that this is a distinction without a difference and that it is legally of no significance on the instant problem whether the declaration was made one day or 50 years after declarant's possession had been given up to the adverse claimant. In either event, the latter does not derive title through declarant in the connotation we are considering, and in no sense can it be said that the nature of a given statement as a self-serving declaration should, in legal contemplation, be considered as a declaration against interest merely because 21 years may not have elapsed in the interim. We fail to see how the time element has any bearing upon the legal character of the statement.

In the instant case, just as in the Donegal case, the recitals of the alleged reverters cannot properly be received in evidence, over objection, as declarations against interest chargeable to plaintiff school district. They are self-serving in nature. They are purely hearsay. They were made when the respective declarants had already parted with possession of the school lot and appear in documents through which plaintiff has not asserted the slightest claim of title and upon which its rights are in no way dependent.

Defendants' second ground in support of the admissibility of the deed recitals, the "ancient document" rule, is also unjustified under the facts. The usual ap-

plication of this concept is in connection with matters of authentication of old written instruments where, as a practical matter, it is difficult or impossible to obtain formal proof of execution thereof. The principle has been succinctly stated in McReynolds v. Longenberger, 57 Pa. 13, 31, the leading Pennsylvania case, as follows:

"The rule on this subject is, that when instruments are more than thirty years old, and are unblemished by any alterations, and obtained from the proper custody, they are said to prove themselves, and the bare production thereof is sufficient, the subscribing witnesses, or all living witnesses of the transaction, being presumed to be dead; and this presumption, as far as this rule of evidence is concerned, is not affected by proof that there are witnesses living." Compare Smucker v. The Pennsylvania Railroad Company, 188 Pa. 40. See also Jones v. Scranton Coal Co., 274 Pa. 312; Commonwealth ex rel. v. Ball, 277 Pa. 301, 305.

It may be conceded that the deeds in question would qualify as "ancient documents" under the rule so stated. Such concession, however, does not in itself solve the present problem or automatically determine the competency of the recitals therein as against the within objections. The instant case does not involve any question of authentication or execution of the deeds as such.

It may further be conceded that the reasons of practicality upon which the "ancient document" rule is founded have been extended under certain particular circumstances, so as to comprise an independent exception to the hearsay rule of evidence. Defendants, however, in our opinion, have not brought the instant case within the circumstances defining the exception. They rely upon the principle enunciated in such cases as Brock v. Atlantic Refining Co., 273 Pa. 76, 80:

"While the general rule is that recitals in deeds are mere hearsay and inadmissible as against third persons who claim by a paramount title, there is an exception to this rule in the case of ancient deeds *accompanied by possession* which are admissible as prima facie evidence of the facts recited even as against third persons." (Italics supplied.) See also Garwood v. Dennis, 4 Binney 314; James v. Letzler, 8 W. & S. 192; Dorff v. Schmuck, 197 Pa. 298, and Dougherty v. Welshans, 233 Pa. 121.

The proposition enunciated in these cases, however, has no present application for the reason that the stipulated facts negative one of the conditions always stated as a prerequisite therefor, to wit, the fact of possession or other objective indicia of ownership in comformity with and in corroboration of the recitals. Thus in the Garwood, James and Brock cases, supra, actual possession in fact followed the recital in question, and in the Dorff and Dougherty cases, supra, other acts of dominion consistent with the recited facts were shown and held sufficient where the nature of the land did not permit a full physical occupancy thereof as a practical matter and there was no contrary possession. But in the instant case, it is undisputed that possession of the subject premises has consistently remained in the school district and has never been in defendants or their predecessors since a time long prior to the recitals in question, and there is absolutely no evidence whatsoever of any other indicia of ownership in defendants thereunder which would corroborate the challenged statements.

In the latter connection, it may be here observed that even upon giving full consideration to all the other facts in the stipulation of counsel upon which this case was submitted, and completely disregarding plaintiff's various objections to some thereof, none of the matters therein contained is of any affirmative

assistance to defendants' case. It is all either equivocal or entirely consistent with the presumed grant of a fee title to plaintiff prior to 1862. We therefore deem it unnecessary to make any disposition of plaintiff's objections other than as already noted.

In view of the foregoing considerations, we conclude that the general hearsay rule, and not the exception thereto, should be invoked in this case. The deed recitals are therefore rejected as evidence. Since this leaves the record with the school district's original possession entirely unexplained, the rule of the Donegal case applies and plaintiff's title should be sustained.

In the usual action to quiet title where a finding is made for a plaintiff, an order would be entered by the court at this stage of the case requiring defendant to take appropriate action, usually in ejectment in this type of proceeding, to establish his title within 30 days, under penalty of suffering a final judgment upon praecipe for failure so to do: Pa. R. C. P. 1066 (b) (1). Indeed, such an order was expressly contemplated by the prayer of the complaint filed in the present case, and the usual procedure has in fact been followed to final judgment with respect to defendants herein other than defendants Kreutz and Gemmell. As to the latter, however, neither the court nor the parties can conceive of any useful purpose to be served by the entry of such an interlocutory order. All of the issues which could possibly be involved in an action of ejectment by said defendants against plaintiff school district have already been presented and decided herein. Compare Legion Club of Belle Vernon, Incorporated v. Jones, 63 D. & C. 346. Accordingly, the present parties have stipulated that, notwithstanding the prayer of the complaint, the court may enter any order necessary for the granting of proper relief, a power expressly authorized by Pa. R. C. P. 1066 (b) (4). We therefore will make a final disposition of the case at this time,

a result particularly to be desired to avoid confusion relative to possible appeals from our decision on the merits.

### Order

And now, November 8, 1957, for the reasons stated in the foregoing opinion, final judgment is hereby entered in favor of plaintiff and against defendants Oliver R. Kreutz, Marie B. Kreutz, Helen M. Gemmell, trustee and individually, James Gemmell, Jr., and James Gemmell, III, adjudicating the title of plaintiff to the premises described in paragraph one of the within complaint to be valid and indefeasible against said defendants, and barring said defendants from asserting any right, lien, title or interest in said premises inconsistent with the interest or claim of plaintiff to the fee simple title thereto set forth in said complaint.